Good morning. My name is Derek Boyd along with Ms. Allen Williamson here today. We represent the appellant, Laura Hampton. Your Honors, to start off with, we agreed with Appalee in one of the first statements made in their brief and that is this case involves a straightforward application of the Anti-Injection Act. I intend to spend most of my time this morning on that issue and the re-litigation issue. Obviously happy to answer any other questions that may arise that have come up in the briefs. But this case, Your Honors, we believe falls squarely under Smith v. Baird Court, which has three principal teachings that I think control the outcome of this case. Number one, the re-litigation exception is to be viewed very strict and come up from a prior order, which is what this case raises. In the words of Justice Kagan, the bailiwick of making that decision falls to the state court, the second court. And number three, if there's any doubt about what the federal court should or shouldn't do, that doubt should weigh in favor of letting the state court proceed with the case. And here, Your Honors, we think the district court failed to follow these teachings of Smith and we think that error is plainly evident on page 11 of its order. And if I may, I'll start with the two passages we think that show that. And it's ROA 1486 for purposes of the record. The first is that the district court said it found that equity trust conduct after it had already issued its order did not amount to waiver of the right to enforce the forum selection clause. And here, the district court's order was January 31, 2013. We then, as we'll get into the timeline and it's set forth in the briefs, with respect to Laura Hampton, filed a state court action July 1, 2013. We went through 2013, 2014, 2015, and then the issue came up of Judge Akel's order not being allowed, as being a proceeding. And regardless of whether you agree or disagree with the state court's ultimate decision, the point is the decision to determine whether equity trust had waived the forum selection clause by its state court conduct was the state court's decision to make. And number two, the federal district court could not possibly have made that decision based on that conduct because that conduct had not yet occurred. And so the district court's order of January 31, 2013, on which it based its injunction, could not have decided the issue of waiver. And yet, in its injunction order, it states that the district court says it did not find that equity trust conduct amounted to waiver. So that's point number one. Point number two is the district court, to get to that issue, addressed this under the context of claim preclusion. We believe, and I think the authorities support this, that the proper analysis is under the context of issue preclusion. And I'll confess, getting those two mixed up, I'll probably do it more than anybody. But I think it's important in this case, and this case sort of illustrates the difference. By looking at it from a claim preclusion standpoint, I think the district court, and that was what equity trust, the appellee, invited the district court to do, because that was their initial argument that claim preclusion controls. And I think the district court's view was, I've decided all under a claim preclusion analysis, anything that either I did decide, or related to what I decided, is within the scope of my order. And that may be proper for claim preclusion, but that's not the right analysis here. Under Smith v. Bayer, it must be the same issue that was decided. To get to claim preclusion, as the court states in its order, it says, the court's prior action concluded with a final judgment on the merits. And that's the key language, on the merits. Because the court's final decision back in January of 2013 was that Laura Hampton, her claim was improperly venued in the Western District. Improper venue is not a decision on the merits. That's true as a matter of procedural law. Federal Rule Civil Procedure 41B plainly states it's not a decision on the merits. It's true as a matter of Fifth Circuit case law. We cite to Vasquez and other cases where this court has said that a decision on venue is not based on the merits. Can you stop there for a second? Sure. I agree that the text of 41B would make me believe that it was not on the merits. But when I read our case in Duffy, it causes me to have some consternation on this. And I'm wondering if you can establish waiver, if the court was wrong on waiver, without regard to whether it was also wrong on issue preclusion. Are these multiple options or do you have to have both to win? I think we went on waiver alone, Your Honor, to answer the question. Okay. Because the issue preclusion seems to get gummed up, even though the text seems to agree with you. Our opinion in this Duffy case does not. So can you help me with that? In Duffy, which was a forum selection clause case, I think if you read through that opinion, it does focus more on they were seeking to relitigate whether the forum selection clause applied. It was the same specific issue. And so I think, although it may use the term claim preclusion, I think this is one of those cases where it really was more of an issue preclusion analysis than a claim preclusion analysis. But back to the court's question, I think if the issue preclusion versus claim preclusion hangup becomes an issue, I don't think that necessarily means we do not get the injunction undone or vacated, because waiver alone is something the court clearly, under Smith v. Bayer, I'm going to say that wrong, didn't have the right to go back and second-guess the state court's decision on that. Now, how come you all didn't discuss Duffy, at least in your reply brief, when it's relied upon so heavily by opposing counsel? I think we addressed those cases, Your Honor, and it's in footnotes in our reply brief. And I apologize if Duffy is not mentioned. We responded to those cases in footnote four of our reply brief, which is on page six, which talks about Tufts and Murchison and a lot of these cases where the issue of, where the words claim preclusion may have been used, but I believe it was an issue preclusion analysis that the court ultimately ended up going through. But I'm happy to discuss Duffy and prepared to discuss it today if the court has any... Okay, please do so. Why doesn't it hurt, ruin your argument in prong two of your options? I think the difference between our case and Duffy, number one, setting aside the issue of waiver. I don't think there was any of the evidence we have here in this case about the two and a half years in state court waiting to lose in summary judgment. Set that aside. So that's my first argument on Duffy. The second argument is, I think Duffy gets back to, it looked solely at the context of, okay, the federal court looked at the form selection clause and said the form selection clause, if I'm remembering right, required dismissal of the first case or required that it be transferred or moved to another court. The second case comes along and I don't think, I think it was the exact same claim under that exact same clause. Here, we don't necessarily have that because we filed a Texas Securities Act claim in the federal district court in our initial action. In the state action, we came back and filed not only a Texas Securities Act claim, but a host of common law claims. So you may have, there's the possibility of a different issue concerning the scope of the form selection clause. Further, what we have by that time, which we didn't have when we first got the district court's decision back in January of 2013, is a direct case from the Ohio Court of Appeals that specifically says these state law claims that Laura Hampton filed in the Texas state court action don't fall within the scope and aren't barred by these contractual provisions that were signed by these clients. Because if you remember, when we originally filed this lawsuit, it wasn't just Laura Hampton. It was 30 some odd investors that we filed on behalf of. And obviously, when we got the initial venue ruling, we had the option of bringing that appeal to this court at that time. Was this argument made to Judge Yackel? This whole, the Ohio Court of Appeals and that different claims? Because it's not really addressed in the opinion, is it? No, it's not addressed in his opinion, I agree. But we did make two arguments for why the form selection clause should not apply in the injunction hearing that we had in 2016. Number one, waiver. Number two, Judge, these are not just the Texas Securities Act claim that was before you. It is common law fraud, fraudulent inducement, and a whole host of Texas common law. And you have a case that's from Ohio that says it doesn't belong there. Correct. And by that time, and we do cite what's called the Bentley case in Ohio. We cite it in our brief before this court, and we made the argument to Judge Yackel. And that is, what we didn't have before when we were before you when you originally did your venue ruling, where you were sort of second, you know, trying to predict what Ohio law would be, we've now got an Ohio law case on point. And we cite the Bentley case, Your Honor, on page seven of our original, of our brief in this court. So we did address that with Judge Yackel at the injunction hearing as well. Now, do we, why do we need, if we were to agree with you to vacate and remand with instructions, why wouldn't we just vacate and render? I mean, what is, what needs to go back to Judge Yackel if you win? I think it's simply an order from this court. And I'm not foreshadowing. Correct. Correct. I understand. Vacating the injunction. Because it's only the injunction in federal court that is preventing us from going to trial in the state court. That it's just sitting there, right, waiting for trial. The state court action is just sitting there. All summary judgments and special exceptions and everything have been ruled on. It's just sitting there. Discovery was closed. Case was set for trial. In fact, we didn't even been to mediation. We'd been through all the bells and whistles going for trial before when this issue came up. So it is just sitting there waiting for, I guess we would have to go back in and file a request for a trial date. But I think all we're asking from this court is that it vacate Judge Yackel's injunction ruling. And Your Honor, the, one of the things I wanted to touch upon is sort of why didn't we appeal? Because that's something they raised in their response brief. Why we didn't appeal this at the initial, when Judge Yackel, and we certainly don't contest that that initial order remains valid. We agreed, actually we agreed to accept it and be bound by it. As I was saying, we represented 30 some odd plaintiffs, 27 of whom had signed these investment agreements that had these form selection clauses and invested money through the account. Those 27 plaintiffs agreed to be refiled and they refiled in Ohio and proceeded. And of those 27 plaintiffs, it included Jack Hampton, ironically, who is Laura Hampton's husband. So the suggestion that this is simply a case where we didn't like Judge Yackel's ruling and ran down to the state courthouse to file something I think is a little bit in error. What actually happened was, and if anybody is to be blamed, blame me, when we got through this and realized Laura Hampton is in a unique position, she did sign one of these accounts, we don't dispute that, but she never invested a dollar through any of those accounts. We joined her in the state court action that we had filed on behalf of the non-account holders, to use the term Judge Yackel used in his order. I think at that point, and where we find why waiver, we think, controls here is, there were several options to equity trusts who challenged Laura Hampton filing in state court at that time. And they didn't raise any of them. They identified four things in their, in Abilene's brief, of where they say they raised this, but the first one is a special exception, which was nearly two years after she filed the petition. They didn't pursue a hearing on that, never set it for hearing. The second one is, they amended their answer to assert the defense of res judicata, which for reasons we've talked about, we don't believe is the proper defense. And it wasn't until July of 2015 that they actually filed a, they filed a motion for summary judgment, not a motion to dismiss, which raised Judge Yackel's order. And so we believe that that's, that they pursued those rulings. They also pursued rulings on limitations, on several merits-based defenses, and lost on those. And it was only then that they came back to argue venue. And we believe, we can talk policy arguments all day long, we believe that Smith versus Behr court is controlling because Judge Yackel was simply deciding an issue that the state court had already decided, and that he had not previously decided. But for all those reasons, we would ask that the Judge Yackel's injunction be vacated, so that we can go back to the state court and ask for a trial setting and proceed with trying this case on the merits. And if anything, we reserve the rest of our time for rebuttal. Thank you very much. Thank you. Questions? May it please the court, my name is Retta Miller, and along with Josh Romero, we represent the Appley Equity Trust. I want to start with a question that Judge Elrod raised about why a stuffy does not control in this case. And we would submit to you that this court's ruling in Duffy is dispositive of the issue of the relitigation exception. It also helps negate their claim on waiver. And I think it's important to look at, and I'll talk about Smith in a minute, but it's important to look at timing. Duffy was decided after the Supreme Court decision in Chick Manchu. Then Smith came along by the U.S. Supreme Court. The U.S. Supreme Court said that Smith was nothing more than a relitigation of what was decided in Chick Manchu. And in fact, Judge Higginbotham, in reaching the decision in Duffy, cites Chick Manchu and makes a decision that in that case, it was a denial of injunction on the relitigation exception, was an error, and in fact, they reversed and entered for entry of the relitigation injunction in that case. Just like this case, that was a forum selection clause case. And Judge Higginbotham made a number of rulings in that case that are directly on point here. The first is they want to say there's no final judgment. Well, in fact, Judge Higginbotham indicated that an order dismissing for improper venue is final and appealable for purposes of the relitigation exception. Judge Higginbotham's not the only person to make that ruling. And that's true for any dismissal without prejudice? For any dismissal on a forum selection clause. There's a difference between... Was that a without prejudice dismissal? Yes, it was. And the judge said in that case, without prejudice only means that it's without prejudice to go file in the right forum. It's very odd, though, because it's not normally thought of as a final judgment. I would agree. But one of the things that the appellant overlooks here is that Judge Yackel not only entered an order enforcing the forum selection clause in January of 2013, but less than a month later entered a judgment that turned that into a final appealable judgment. And as Harvey, as this court said in the Harvey case, one that appellant relies on, orders considered final for relitigation exception when they become appealable. They chose not to appeal this for whatever reason. Did they not understand what the ruling was? Those are issues that they all waived if they didn't appeal it in that regard. Duffy, the court also said that a dismissal for improper venue is final and preclusive for the relitigation exception. Now, the cases that they want to rely on are forum nonconvenience cases. And those are different. Chick Kam Chu is a forum nonconvenience case. And Judge Higginbotham recognized the distinction in those two cases in Duffy as well as this court recognized in Vasquez the difference in those two cases. And they recognized that when you determine a substantive issue like choice of law, that then becomes final for purposes of the relitigation exception. And in fact, in Chick Kam Chu, what the Supreme Court did was say, okay, we don't have a final judgment with respect to the forum nonconvenience issue, but the court also made a decision and issued a relitigation injunction on choice of law. And the Supreme Court said the choice of law is a substantive issue, and that's final for purposes of relitigation exception. So what the Supreme Court in Chick Kam Chu said was, you got to modify the injunction so it only applies to the substantive law issue, choice of law. Forum selection clauses are substantive like choice of law. They're not more procedural like the forum nonconvenience. And in fact, Harvey, one of the cases appellant relies on in their briefing to a great deal, they didn't even get it as a decision where it was a transfer. And the court says if it's a transfer on venue, that's not final. So the courts make a distinction between the procedural forum nonconvenience, and they But for purposes of relitigation exception, an order enforcing a valid forum selection clause is final for purposes of relitigation exception. And that was, that's both Judge Higginbotham in the Duffy case, and this court also in the Harvey case. So that's something that's settled in this case, or in this court has been decided. Can you help me why you don't have a Parsons problem, a Parsons-Steele problem? Yes. Because the State court, when it denied summary judgment on res judicata, that's an order. It's an order, but if you read the And so why isn't that an order that even Duffy would say would forbid the court from Because if you read the first part of Judge Higginbotham's decision in Duffy, it specifically addresses Parsons-Steele. Parsons-Steele says only when you have a final appealable judgment, and it's cited in Duffy, the case was a motion to dismiss that was denied. And the judge says, no, that's not a final judgment in the State court such that it precludes you from coming back for the relitigation exception injunction. Here, there is no final judgment by the State court. And in fact, as we argued to Judge Yackel, had we waited until there was a trial on the merits, and the judge had entered a judgment based on a trial, at that point, under Parsons, we would have been precluded from coming back. Okay, why didn't you wait too long? You're arguing now why you couldn't wait any longer. Why didn't you wait too long? Because the issue, the way the appellant wants to phrase it, really misses the point. Appellant framed the issue as, did we waive our right to enforce the forum selection clause? We didn't waive that right. We got an order from Judge Yackel enforcing the forum selection clause. But you didn't rely on it in the State court with any, and you didn't go back to the Federal court to say, hey, they're violating. Well, and you continued to litigate and bring all kinds. If we were going to apply the Morant standard, you certainly litigated too much in State court to not be found for regular waiver. Well, let me address a couple of things, because the real issue is, did the Federal court still have jurisdiction? Now, I'm not suggesting that ultimately the court couldn't make a final judgment on waiver, and then we would have had the Parsons deal problem, but we didn't get there. Because in Maurer, which is cited in, which is the Texas Supreme Court's case, which is cited in Duffy, you've got to have fully heard, you've got to have a reasoned opinion, it's got to be appealable. A denial of a motion for summary judgment is none of those things. Right, but you laid low and continued to litigate and tried to get other dispositive rulings from the State court. I mean, and that's why isn't that, why shouldn't you be held, why isn't regular waiver, and let me address that, Your Honor. That's applicable. There's two points. There was, it was abundantly clear that the order was enforceable initially, and they followed it. She went to Ohio, and it was only later that by simply changing the name and the heading and slipping in that she was individually as well as in a representative capacity. And adding State law claims. These other State law, in addition to the one securities. But the State law claims were raised in Ohio, and they were pursuing those in Ohio, and they misconstrued the judge's order on the form selection clause. On the form selection clause, they made the argument there that it was very narrow and only covered contract. And the judge said, no, the form selection clause is a broad form selection clause that covers all tort claims. So the judge had already ruled, Judge Yackel had already ruled that this form selection clause was broad and covered their tort claims. If they didn't like that, they should have appealed it at the time. And they didn't appeal it at the time, so they waived that argument. What happened is, there were two cases in State court. One was going on, this was largely dormant. The, a new scheduling order was entered in January of 2015. We noticed, and it's in the record, we noticed Laura Hampton as Hampton Trust, who we believe was a plaintiff in the case for deposition. And when we took her deposition in March of 2015, it became clear that she was trying to raise the same claims in Texas that she was still raising in Ohio, in violation of Judge Yackel's order. Within a month, we filed special exceptions, raising that issue, had a hearing, tried to get the issue resolved. They amended, made for the first time in May of 2015, specific allegations as to Laura Hampton individually. We then raised affirmative defenses of race judicata, collateral escapo, the forum selection clause, and continued to raise those. Now, it's important to remember, she wasn't the only plaintiff in the Texas action. There were eight plaintiffs in Texas besides her, and there were scheduling order deadlines that dealt with everybody. And so, we had to file motions for summary judgment with respect to the plaintiffs, or lose that right in State court. We filed our motion on race judicata in State court, raising both Judge Yackel's order, and the forum selection clause, and the decision in Ohio. That was denied, ultimately, without any kind of a ruling. It was just, first it was stayed, and then it was, stay was lifted, and it was denied without any kind of opinion or anything in that regard. Once it became clear, in March of 2015, that Laura Hampton was attempting to violate Judge Yackel's order, we repeatedly raised the issue of Judge Yackel's order. I don't understand why it didn't become clear much, much, much earlier. That's the question, and that's, why do you believe it became clear then, and why didn't it become, why wasn't it clear from the beginning? I know you said this, well, we thought she was only on, not in her individual capacity, but then once the special exceptions were filed. That was April of 2015. Right, right. Why didn't you go there before you filed summary judgments in August, in July and August? We filed the special exceptions in April of 2015. They amended in May of 2015 to finally allege specific allegations regarding her individually. And then we timely raised the affirmative defenses in our discovery responses, in our pleadings, and then we moved for summary judgment in July of that year. But you did affirmative litigation this whole time. You sought discovery. You did, and then instead of going straight to Judge Yackel, you filed a summary judgment. With not just this point, but with lots of other points, too. And I have two responses to that, Your Honor. The first is, remember, she wasn't the only plaintiff in this case. There were eight other plaintiffs, including her in her representative capacity. And in all of those summary judgments, we referenced our motion for summary judgment with respect to her on race judicata, and Judge Yackel's ruling. So each of those were filed subject to that. But we had deadlines with respect to all of the plaintiffs, not just Laura Hampton, that if we didn't meet those deadlines, we were going to lose them. Now, you also ask, why didn't we go immediately to Judge Yackel? Yeah, I still do not see why you didn't go to Yackel. Judge Yackel went much earlier. Because the concept of, under the dual court system, both the courts have the right to determine the issue. And the relitigation exception is considered kind of a last resort. So we tried first to get the state court judge to recognize his order. And only when the state court wouldn't acknowledge his order, then we felt we had no choice but to go back to Judge Yackel. You also tried to win the case outright in the state court. Because we had eight other plaintiffs. And that's what, instead of going to Judge Yackel, you tried to win on the merits in Texas state court. And you would have been perfectly happy winning on the merits in Texas state court. But now you're stuck with the trial setting. And so then you go. Well, winning on the merits would have meant we won on race judicata. And we wouldn't be going on her. There was no evidence. I mean, weren't there others? There were others as well. You had other merits-based things that would have won outright too. Correct. But we had multiple plaintiffs that we were dealing with, including Hampton. But that's irrelevant to her. It seems like this is like a Merant situation, which is also a forum selection case, where we held that too much litigation, affirmative litigation, took place and that there was waiver. And that's a ‑‑ Well, excuse me. Go ahead. Well, to talk about the waiver, on any of the waiver standards, there's two prongs. One was there either too much litigation or was there an affirmative ‑‑ It was affirmative litigation on your client's behalf. It was defensive litigation defending claims by summary judgment. Seeking discovery against her and then seeking summary judgment against her. Those are not just defensive moves. They were moves that we made to defend the claims of her, but individually. But they're using the Texas ‑‑ you're happy to be in Texas when Texas might be going your way. But, well, actually we weren't. Because the minute we found out that she was trying to be in Texas, we started raising the issue. And we couldn't get the judges to follow it. We pled the special exceptions. We didn't get any relief there. Then the next thing was to move her summary judgment. We didn't get any relief there. And so we ended up going back to the court. There's an issue in waiver. You only have ‑‑ you have to show prejudice to the plaintiff or to the other party. And there is no prejudice to her. She is the person who followed Judge Lakel's order that was very clear, went to Ohio, and then while she's still a plaintiff in Ohio and pursuing her claims in Ohio, she comes back to Texas in violation of his order. There is no prejudice to somebody who is form shopping in that regard. Why isn't there prejudice in having to answer your summary judgment motions and answer your discovery in Texas State Court? Because the same counsel was going to answer that discovery on behalf of everybody. And on behalf of her under representative capacity. You know, you can't create the situation and then claim prejudice in that regard. You know, she was fully able to litigate her claims in Ohio State Court and didn't have ‑‑ was not precluded at all from doing that. What's the status of that now? It's not a part of the record, but it's my understanding that she has voluntarily dismissed those claims without prejudice with the right to refile them by February of 2018. Not that anybody raising limitations or any other bars to those. I want to mention because counsel started with Smith, the Supreme Court decision in Smith. Smith is a very different case than this case. In Smith, it was the Supreme Court, the decision, the facts in front of it were that it was ‑‑ they had denied class certification in the state or in federal court and then it went to ‑‑ they filed a new case with a new plaintiff in West Virginia State Court asserting class certification under the West Virginia class certification statute. And what the court said was, one, that you didn't have the same parties because the party in the second case was an unnamed plaintiff in the federal class action. And two, that because West Virginia had specifically disavowed the federal law in the area of class actions, that they did not ‑‑ it wasn't the same issue or fact. What they're trying to argue in here is somehow that once you have an order, that you cannot ‑‑ that you can waive that order simply by the actions that they've taken. All of their cases deal with form selection clauses. None of their cases deal with orders granting dismissals on form selection clauses. And that's why I bring you back to Duffy, because in that case the argument was that the state court judgments denying preclusive effect to the federal form selection clause order were preclusive and prevented them from coming back to federal court. And the court said, no, as long as there's not a final judgment on the merits, then you have the right to come back. The federal judge retains jurisdiction to enforce his order. So I would suggest to you that this court's decision in Duffy supports us both on the non‑waiver, the court still had jurisdiction to enforce his injunction, and also that he found that a valid form selection clause order met the standard for the relitigation exception. Do you believe that Judge Yackel implicitly analyzed these other state law claims? Yes. I mean, I think he actually did. In his order, because they raised that issue. They said the form selection clause only applied to the TSA claim. And that's not what the original form selection clause dismissal order says, or is it what his judgment with the injunction. In the injunction he says, and makes a specific finding, that my first order was that these were broad form selection clauses, and that therefore they covered all their tort claims, their common law claims, in addition to any contract claims. He made that finding in his first order, and he reaffirmed that finding when he granted the injunction. So it wasn't implicit. It was specifically in the order. But some of these were not yet alleged. They weren't alleged, but he said that the basis of the form selection clause was broad enough that it covered all tort claims. Because their original argument was it only covered contract claims, and it didn't cover the TSA claim, because that was a tort claim. And the court said, you're wrong, it's a broad form selection clause, and it covers all tort claims. All tort claims. Related to their claims with equity trust. And if they had an issue with that ruling, that was an issue with the original dismissal order that should have been appealed then. They should now be able to collaterally attack that order at this point, because that order was long ago. Just as the order, you heard counsel say, we didn't quite understand that it applied to her. That's an order, the evidence was in front of him, and that's an order they should have appealed back then and failed to. And that's why Judge Yackel said if there's waiver, they waived it by not appealing his original order. Unless the court has any further questions, we would simply ask that you reaffirm Judge Yackel's order. Thank you. Let me start with that last point. Our position is Judge Yackel could only decide what was in front of him in 2013. The only claim in front of him was the Texas Securities Act claim. That was the only claim we alleged in the original complaint that was filed in 2013. When he ruled, he necessarily only ruled that the forum selection clause covered the Texas Securities Act. But setting aside, even if we grant that he had the authority to rule on that claim and any other potential tort claim that Laura Hampton may ever have against equity trust, including and not limited to a car wreck case, if she ran into a delivery guy from equity trust, that still doesn't take the waiver issue off the table. And I think that's where this case is the cleanest and the clearest basis, because that takes it outside of Duffy, because Duffy did not involve anything close to waiting two-plus years in Texas state court to employ a head's-eye win-tells-you-lose position of, if I can win on all the merits, then great, I don't ever have to worry about Laura Hampton's case. I do want to also address the Ohio litigation. The court asked that question. There was a settlement, a global settlement, of all the plaintiffs that went to Ohio with the exception of Laura Hampton, who non-suited without prejudice subject to the terms and conditions that had been stated, obviously because the Ohio court was aware of this proceeding. And number two, ironically, what we've heard in Ohio is, oh, she can't recover any money up here. She never invested any money through her accounts. So we're sort of in a catch-22 position, which is why we would like to proceed as we originally intended to proceed with her claims as part of the Texas state court proceeding. I think all of this comes back to what Judge Elrod brought up, and that was we take issue with the fact that this was not a dormant case by any means. We cite on pages four and five examples of the record. It wasn't discovery is sent by Equity Trust to all plaintiffs in the case. Discovery was sent specifically to Laura Hampton. Laura Hampton individually specifically sent Discovery to Equity Trust, and they answered it. And at no time during 2013, 14, or 15 did we hear anything about, wait a minute, Judge Akel's order says you can't proceed in state court. There were mechanisms available under state law. They could have filed challenge to venue right away. There's an interlocutory appeal process if the state court judge made the ruling they didn't like. And so for all those reasons and the policy reasons, we think this all comes back to the waiver issue. And I think the prejudice issue is evident in the fact that Laura Hampton had won her right in Texas state court to proceed to a jury trial. She had already gone through the discovery process. She had already been deposed in that proceeding. And so for all those reasons, we think this case, even if it is a close call, I think that's where Parsons does come in. Because Parsons not only addresses the issues that were discussed before, but it makes clear that principles of federalism require caution in this area. And Smith v. Bear Court also concludes by saying if there are close cases, that is an easy answer. In close cases, deference is given to the state court, and the state court proceeding is allowed to go forward. I would submit this is a clear-cut case of waiver, but to the extent it is a close case, I think those Parsons and Smith balance the scales in favor of vacating the district court's injunction order and allowing Laura Hampton to proceed with her state court trial. And we ask that the court grant that relief. Thank you very much.